[Cite as *State v. Martin*, 2011-Ohio-810.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| STATE OF OHIO | JUDGES: |
| | Hon. W. Scott Gwin, P. J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2010 CA 00085 |
| WILLIAM P. MARTIN | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common
                             Pleas, Case No.  2009 CR 02043


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      February 22, 2011


APPEARANCES:

For Plaintiff-Appellee              For Defendant-Appellant

JOHN D. FERRERO                     KRISTINE W. BEARD
PROSECUTING ATTORNEY                4580 Stephen Circle NW
RENEE M. WATSON                     Suite 300
ASSISTANT PROSECUTOR                Canton, Ohio  44718
110 Central Plaza South, Suite 510
Canton, Ohio  44702-1413

*Wise, J.*

**{¶1}**   Appellant William P. Martin appeals his conviction and sentence entered in the Stark County Court of Common Pleas on domestic violence, intimidation of a crime victim, violation of a protection order and resisting arrest.

**{¶2}**   Appellee is State of Ohio.

## STATEMENT OF THE FACTS AND CASE

**{¶3}**   Jennifer Parr and Appellant William Martin met in August of 2009, and she moved in to his Alliance home in November of the same year.  (T. at 103-104).

**{¶4}**   On December 18, 2009, Parr and Martin got into an argument. Parr stated that she attempted to end the argument by lying down on the sofa and closing her eyes. She says that Martin responded by throwing a glass of water in her face.  (T. at 105-106).  She stated that she then attempted to leave the house, but Martin blocked the door and pushed her back into the house. When she went into the bedroom to put on dry clothes, Martin followed her. She says that she tried to get into the bedroom by herself and lock Martin out, but he pushed his way into the room. She claims that she began screaming because she was frightened. Martin put his hand over her mouth and nose, sat on top of her and screamed in her ear.  She states that she became further frightened because she could not breathe. (T. at 108-109).

**{¶5}**   Parr testified that Martin threatened that if he went to jail, it was going to be for a good reason. He also threatened that Parr had better move out before he got out of jail, otherwise he would find her and her family. He then told Parr if she called police, she would be dead before they got there. He then went back downstairs. Fearing

Martin meant what he said, Parr sent a text message to her daughter and asked her to call police. (T. at 109-110, 132).

{¶6} Alliance police officers Dean and Shatzer arrived at the scene and were met at the back door by Parr. Dean spoke with Parr in the kitchen and Shatzer spoke with Martin in the living room. While Dean spoke with Parr, he noted she was quiet and appeared fearful. Several times while he was speaking with her, Martin attempted to enter the kitchen saying "don't do this to me, you can't do this to me." (T. at 138-140). After he finished gathering information from Parr, Dean went into the living room and told Martin he was under arrest for domestic violence. Martin initially appeared to walk toward the officers to comply with arrest, but then charged toward the kitchen and Parr. The officers intercepted Martin and took him to the floor. Martin struggled against the officers. They had to ask him several times to stop resisting before he finally complied and was handcuffed. The entire time, Martin was screaming at Parr "don't do this to me, I can't go to jail, don't do this to me." (T. at 141-142).

{¶7} On December 21, 2009, Parr attended Martin's preliminary hearing. She claims that during the hearing Martin gave her dirty looks, attempted to make comments to her and generally made her feel uneasy. The same day, Parr obtained a civil protection order. (T. at 114-115, 144).

{¶8} After the protection order was in place, Martin used his grandfather and a female acquaintance to relay messages to Parr. He also wrote letters to Parr, sent them to his grandfather and had his grandfather read them to Parr. (T. at 116-118, 154).

{¶9} On January 29, 2010, as a result of the above events, the Stark County Grand jury indicted Martin on one count each of domestic violence, in violation of R.C.

§2919.25(A), a third degree felony, intimidation of a crime victim, in violation of R.C. §2921.04(B), a third degree felony, resisting arrest, in violation of R.C. §2921.33(A), a second degree misdemeanor, and violation of a protection order, in violation of R.C. §2919.27(A)(1), a first degree misdemeanor.

{¶10} Martin pled not guilty to the charges and on March 9, 2010, the matter proceeded to a jury trial. The parties stipulated that Martin had two prior domestic violence convictions and that the civil protection order was an accurate and valid protection order.

{¶11} After hearing all the evidence and deliberating, the jury found Martin guilty as charged.

{¶12} On March 10, 2010, Martin was sentenced to an aggregate total of ten years incarceration. (T. at 148-149, 216-223, 233-236). The sentencing entry was filed on March 16, 2010.

{¶13} Appellant now appeals to this Court, assigning the following errors for review:

**ASSIGNMENTS OF ERROR**

{¶14} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING THE INTRODUCTION OF OTHER ACTS EVIDENCE.

{¶15} "II. THE STATE'S FAILURE TO LIST THE ELEMENTS OF THE PREDICATE OFFENSE IN THE INDICTMENT FOR THE CRIME OF INTIMIDATION OF A VICTIM, NAMELY, THE DATE AND LOCATION OF THE ALLEGED CRIME CONSTITUTING THE PREDICATE OFFENSE, PREVENTS THE ACCUSED FROM

RECEIVING ADEQUATE NOTICE OF THE CHARGE OF INTIMIDATION OF A VICTIM.

**{¶16}** "III. APPELLANT'S CONVICTIONS FOR DOMESTIC VIOLENCE, INTIMIDATION AND RESISTING ARREST ARE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

**{¶17}** "IV. APPELLANT'S FIVE YEAR SENTENCE FOR INTIMIDATION IS GROSSLY DISPROPORTIONATE TO THE CRIME THEREFORE CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT."

**I.**

**{¶18}** In his first assignment of error, Appellant claims that the trial court erred in allowing the introduction of "other acts" evidence". We disagree.

**{¶19}** The admission or exclusion of evidence lies in the trial court's sound discretion. *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.

**{¶20}** R.C. §2945.59 and Evid.R. 404(B) provide the rules for the admission or exclusion of other crimes, wrongs, or acts.

**{¶21}** R.C. §2945.59 states:

**{¶22}** "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan,

or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant." *Id.*

**{¶23}** Evidence Rule 404(B) states as follows:

**{¶24}** "(B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

**{¶25}** Generally, these rules are to be construed against admissibility of the "other acts" evidence. *State v. Burson* (1974), 38 Ohio St.2d 157, 158, 311 N.E.2d 526.

**{¶26}** The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. See *State v. Curry* (1975), 43 Ohio St.2d 66, 68. This danger is particularly high when the other acts are very similar to the charged offense, or of an inflammatory nature. *State v. Schaim,* 65 Ohio St.3d 51, 60, 1992-Ohio-31; *State v. Miley,* Richland App. Nos. 2005-CA-67, 2006-CA-4670; *State v. Clay,* 187 Ohio App.3d 633, 2010-Ohio-2720.

**{¶27}** Evidence of other acts is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant, and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *State v. Carter* (1971), 26 Ohio St.2d 79, 83; *State v. Lowe,* 69

Ohio St.3d 527, 530, 1994-Ohio-345. (Citing *State v. Broom* (1988), 40 Ohio St.3d 277, 282-283; Evid.R. 404(B); R.C. 2945.59); *Miley,* supra; *Clay,* supra.

**{¶28}** Appellant herein is not claiming that Evid.R. 404(B) or R.C. §2945.39 preclude the admission of such evidence herein, but instead argues that the trial court abused its discretion when it allowed "the State to inquire about the other acts evidence in general rather than specific terms and in response permitted Parr to testify in general terms about Martin's alleged past acts of domestic violence." (Appellant's Brief at 6). Appellant cites *State v. Collie* (1996), 108 Ohio App.3d 580, for the premise that the State may use evidence of prior bad acts to prove a belief in the imminence of physical harm only if it pinpoints specific acts, times and places.

**{¶29}** *Collie*, supra, cited an opinion out of this Court, *State v. Bolds* (Jan. 19, 1993), Stark App. No. CA-9058, wherein this Court affirmed the trial court's actions in disallowing the victim's testimony that the defendant had "done so many things" to her in the past as not specific enough and requiring the victim to be more specific as to time, place and description of events.

**{¶30}** We have reviewed the transcript of the victim's testimony and find that her description of the "prior acts" and her statements that Appellant had "smacked [her] in the head twice" and that "he had shoved his fingers down [her] throat so hard that he scratched the back of [her] throat. He had thrown [her] naked onto the front porch" were certainly specific as to what actions had occurred. We further find that the jury could figure out for themselves that such acts had occurred sometime between when the couple met in August of 2009 and the December, 2009, date of the assault for which Appellant was on trial.

**{¶31}** Further, we find that Appellant opened the door to this line of questioning during his cross-examination of the victim, when he attempted to elicit testimony from the victim that Appellant made no direct threats of imminent harm to her during their telephone conversation. The victim's testimony on re-direct was relevant to establishing her state of mind.

**{¶32}** Even if we were to determine that such evidence was inadmissible, we do not find beyond a reasonable doubt that it affected the outcome of the trial. *State v. Williams* (1988), 55 Ohio App.3d 212. Based upon the record before us, we conclude that the error in admitting evidence of the past abuse was harmless beyond a reasonable doubt. Separate from the other acts testimony, the state offered ample evidence of Appellant's guilt.

**{¶33}** We first note that Appellant failed to request a jury instruction limiting the use of other acts evidence, thus waiving all but plain error on appeal. *State v. Grant* (1993), 67 Ohio St.3d 465, 472, 620 N.E.2d 50. Plain errors are obvious defects in trial proceedings that affect "substantial rights," and "although they were not brought to the attention of the court," they may be raised on appeal. Crim.R. 52(B). To affect substantial rights, "the trial court's error must have affected the outcome of the trial." *State v. Barnes,* 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *United States v. Olano* (1993), 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508; *State v. Perry,* 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14. Plain error is recognized "only in exceptional circumstances * * * to avoid a miscarriage of justice."

*State v. Long* (1978), 53 Ohio St.2d 91, 94-95, 372 N.E.2d 804 (internal citations omitted).

**{¶34}** Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error. *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240; *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus; *Perry* at ¶ 14.

**{¶35}** Upon review, in the instant case, while we find that a limiting instruction should have been given, we cannot say that the court's failure to give such an instruction affected Appellant's "substantial rights" or that a limiting instruction would have altered the outcome of this case. Crim.R. 52(B); *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894.

**{¶36}** Based on the foregoing, we find that any erroneous admission of evidence relating to past abuse was not prejudicial error. Accordingly, we find Appellant's first assignment of error not well-taken and hereby overrule same.

**II.**

**{¶37}** In his second assignment of error, Appellant claims that the charge of intimidation was based on a deficient indictment. We disagree.

**{¶38}** "The purpose of an indictment is to inform the accused of the crime with which he is charged. The indictment, therefore, provides notice to the defendant of the charges against him so that he may prepare a defense." (Internal citations omitted.) *State v. Davis* (Sept. 17, 1992), Cuyahoga App. No 61076.

**{¶39}** In the instant case, Appellant argues that the indictment was deficient because it did not state the date and location of the alleged crime, thereby preventing

him from receiving notice of the charges against him. In support, Appellant relies on a case out of the Eighth District, *State v. Muniz*, Cuyahoga App. No. 93528, 1010-Ohio-3720.

**{¶40}** Upon review, we find that *Muniz* is factually distinguishable in that such case dealt with a defendant who was charged with a crime that had its foundation on unindicted predicate acts. In *Muniz*, the Eighth District found:

**{¶41}** "… we find that where a defendant is charged with intimidation of a "victim of a crime," an essential element of the charge is that the underlying crime occurred and thus created a victim. *Muniz* is entitled to notice of the predicate crime in the indictment. The charge of intimidation of a crime victim presupposes an earlier crime has been committed. The state has the burden of proof on all essential elements of the crime as charged; therefore, it must prove the underlying acts occurred for there to be a crime victim, regardless of whether a complaint has been filed or a charge brought for that underlying crime."

**{¶42}** Unlike the defendant in *Muniz*, the crime in which Ms. Parr is the victim is contained in the same indictment as the intimidation charge. Furthermore, Appellant was the alleged perpetrator in that charge also. As such, he can hardly be heard to complain that he did not have notice of the charges against him.

**{¶43}** Appellant's second assignment of error is denied.

**III.**

**{¶44}** In his third assignment of error, Appellant claims that his convictions for domestic violence, resisting arrest and intimidation are against the manifest weight and sufficiency of the evidence. We disagree.

{¶45} When reviewing a claim of sufficiency of the evidence, an appellate court's role is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. Contrary to a manifest weight argument, a sufficiency analysis raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 485 N.E.2d 717, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶46} Conversely, when analyzing a manifest weight claim, this Court sits as a "thirteenth juror" and in reviewing the entire record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 548, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶47} Appellant was convicted of domestic violence, intimidation of a crime victim and resisting arrest.

{¶48} Domestic violence, in violation of R.C. §2919.25(A), states:

{¶49} "No person shall knowingly cause or attempt to cause physical harm to a family or household member.

{¶50} " ***

{¶51} "(D)(1) Whoever violates this section is guilty of domestic violence, and the court shall sentence the offender as provided in divisions (D)(2) to (6) of this section.

{¶52} " ***

{¶53} "(4) If the offender previously has pleaded guilty to or been convicted of two or more offenses of domestic violence or two or more violations or offenses of the type described in division (D)(3) of this section involving a person who was a family or household member at the time of the violations or offenses, a violation of division (A) or (B) of this section is a felony of the third degree…"

{¶54} Appellant argues that there was a lack of physical evidence along with material inconsistencies in the victim's testimony. Appellant claims that Ms. Parr's motivation in accusing Appellant was jealousy and/or revenge based on her belief that Appellant was involved in a relationship with another woman.

{¶55} As stated above, the State was required to prove that Appellant knowingly caused or attempted to cause physical harm to a household or family member. The State did this through Ms. Parr's testimony wherein she stated that Appellant threw a glass of water in her face, pushed her, held her down on the ground by sitting on her, and covered her mouth and nose with his hand, thereby making it hard for her to breathe.

{¶56} In this matter, the jury chose to believe the testimony of the victim.

{¶57} Additionally, because Appellant was charged with third degree felony, the State was also required to prove that Appellant had at least two prior domestic violence convictions. Appellant stipulated to two of his prior domestic violence convictions.

{¶58} Based on the record before us, we find that the State presented sufficient evidence to support the conviction on this charge and that such conviction was not against the manifest weight of the evidence.

{¶59} Appellant was also convicted of Intimidation, in violation of R.C. §2921.04(B), which states:

{¶60} "No person, knowingly and by force or by unlawful threat of harm to any person or property, shall attempt to influence, intimidate, or hinder the victim of a crime in the filing or prosecution of criminal charges or an attorney or witness involved in a criminal action or proceeding in the discharge of the duties of the attorney or witness."

{¶61} At trial, the State presented recordings of the telephone calls to Ms. Parr along with her testimony as to the threats made to her by Appellant during and after the domestic violence incident where he warned her that she had better move before he got out of jail or he would find her and her family. She also testified that he told her that if she called the police and made a report, she would be dead before the police arrived. (T. at 109-110, 132).

{¶62} Upon review, we find sufficient credible evidence to support the jury's finding of an unlawful threat of harm aimed at stopping Ms. Parr from testifying in court, and no manifest miscarriage of justice.

{¶63} Appellant also challenges his conviction for resisting arrest, as set forth in R.C. §2921.33, which provides in pertinent part:

{¶64} "(A) No person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another."

**{¶65}** In support of this charge, the State presented the testimony of Officer Dean, who stated that when Appellant was told he was under arrest, he charged at Ms. Parr and had to be restrained by both Officers Dean and Shatzer. (T. at 140-142). He further testified that Appellant continued to interfere with his arrest by struggling with the officers and screaming, and that he had to be told numerous times to stop resisting before finally complying. Id.

**{¶66}** We find Appellant's argument that because his actions in resisting arrest lasted "less than three minutes and did not result in any interference with the arrest or harm to the officers", such does not "rise to the level of resisting arrest" to be both unsupported by any case law and unpersuasive.

**{¶67}** Based on the testimony presented at trial, we find that Appellant's conviction for resisting arrest was supported by sufficient evidence and that his conviction was not against the manifest weight of the evidence,

**{¶68}** Appellant's third assignment of error is denied.

**IV.**

**{¶69}** In his fourth assignment of error, Appellant claims that his sentence on the intimidation charge is grossly disproportionate to the crime and therefore constitutes cruel and unusual punishment. We disagree.

**{¶70}** In *State v. Weitbrecht,* 86 Ohio St.3d 368, 715 N.E.2d 167, 1999-Ohio-113, at 370-371, the Ohio Supreme Court explained:

**{¶71}** "The Eighth Amendment to the Constitution of the United States provides: 'Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.' Section 9, Article I of the Ohio Constitution is couched in

identical language. Historically, the Eighth Amendment has been invoked in extremely rare cases, where it has been necessary to protect individuals from inhumane punishment such as torture or other barbarous acts. *Robinson v. California* (1962), 370 U.S. 660, 676, 82 S.Ct. 1417, 8 L.Ed.2d 758. Over the years, it has also been used to prohibit punishments that were found to be disproportionate to the crimes committed. In *McDougle v. Maxwell* (1964), 1 Ohio St.2d 68, 203 N.E.2d 334, this court stressed that Eighth Amendment violations are rare. We stated that 'cases in which cruel and unusual punishments have been found are limited to those involving sanctions which under the circumstances would be considered shocking to any reasonable person.' *Id.* at 70, 203 N.E.2d 334. Furthermore, 'the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community.' *Id.* See, also, *State v. Chaffin* (1972), 30 Ohio St.2d 13, 282 N.E.2d 46, paragraph three of the syllabus."

{¶72} Here, Appellant's five-year sentence was within the statutory range and thus, not contrary to law. It has been held that a sentence within the range allowed by a valid statute generally is not cruel and unusual. *State v. Hairston,* 118 Ohio St.3d 289, 888 N.E.2d 1073, 2008-Ohio-2338.

{¶73} In this case, given the seriousness of Appellant's multiple offenses, we cannot say that the penalty was "so greatly disproportionate to the offense as to shock the sense of justice of the community." *Weitbrecht* at 373, 715 N.E.2d 167.

**{¶74}** Therefore, we overrule his fourth and final assignment of error.

**{¶75}** For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

By: Wise, J.

Gwin, P. J., and

Hoffman, J., concur.

_____

_____

_____

JUDGES

JWW/d 0211

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


STATE OF OHIO                                    :
                                                 :
    Plaintiff-Appellee                           :
                                                 :
-vs-                                             :                JUDGMENT ENTRY
                                                 :
WILLIAM P. MARTIN                                :
                                                 :
    Defendant-Appellant                          :                Case No. 2010 CA 00085


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

Costs assessed to Appellant.


_____

_____

_____
                        JUDGES